James McDONALD, Individually and on behalf of all others similarly situated Plaintiff,

v.

PENSION PLAN OF THE NYSA–ILA PENSION TRUST FUND, and Board of Trustees of the Pension Plan of the NYSA–ILA Pension Trust Fund, In Their Official and Personal Capacities, Defendants.

No. 99 CIV 9054 NRB.

United States District Court, S.D. New York.

March 29, 2001.

Edgar Pauk, New York, NY, for plaintiff.

Ernest L. Mathews, Jr., Gleason & Mathews, New York, NY, Donato Caruso, Lambos & Junge, New York, NY, for defendants.

## OPINION AND ORDER

BUCHWALD, District Judge.

Plaintiff, James McDonald, brings this putative class action against the defen-

dants, the Pension Plan of the New York Shipping Association International Longshoremen's Association Pension Trust Fund ("Pension Plan"), and the Board of Trustees of the Pension Plan ("Board" or "Trustees") alleging multiple violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA" or the "Act"), 29 U.S.C. § 1001 et seq.[1] Currently before the Court are plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. For the reasons set forth in this opinion, plaintiff's motion is granted in part and denied in part, and defendant's motion is granted in part and denied in part.

## BACKGROUND

### A. The Defendants and the Pension Plan's Benefit Structures

The material facts are not in dispute. Defendant Pension Plan is a joint labor-management trust fund that administers a defined-benefit, multi-employer employee pension plan for the benefit of employee longshoremen and their beneficiaries. Defendants' Statement of Undisputed Material Facts ("Defs.' 56.1 Statement"), ¶¶ 1–2; Pl.'s Compl., ¶ 7. Defendants' Trustees are the administrators of that plan. Defs.' 56.1 Statement, ¶ 4.

The Pension Plan has been modified several times since its inception in 1950. From 1950 to the enactment of ERISA in 1974, the Pension Plan had a single benefit structure providing for the payment of a flat monthly sum, called a Service Retirement Pension ("SRP"). 1950 Agreement and Declaration of Trust and Plan of the NYSA–ILA Pension Trust Fund and Plan ("1950 Plan"), A201;[2] Defs.' 56.1 Statement, ¶ 8. Eligibility for the SRP was originally limited to those 65 years of age or older who had been continuously employed in the industry for at least 25 years and were actively employed at the time of their retirement. Defs.' 56.1 Statement, ¶ 9; 1950 Plan, A193–94. The amount of the SRP has increased over the years, paying a maximum monthly benefit of $950 in 1983, $1,045 in 1986 and $1,250 in 1992 based on 40 years of credited service. Defs.' 56.1 Statement, ¶ 10.

Under the terms of the 1950 plan, an employee's employment in the industry was deemed "terminated" and "shall no longer be considered continuous" when the employee has worked fewer than 400 hours a year for more than two calendar years, subject to certain exclusions not applicable to the present litigation. 1950 Plan, A194. This is an example of a so-called "break-in-service" provision.

After the enactment of ERISA, the Pension Plan was modified to provide an additional Vested Rights Pension ("VRP") for those who did not meet the eligibility requirements of the SRP. Defs.' 56.1 Statement, ¶ 12. The VRP provides benefits according to the following formula:

1. Many provisions of Title I of ERISA, codified at 29 U.S.C. § 1001 et seq., including the provisions concerning employee participation, vesting, and benefit accrual at issue here, were duplicated in Title II and codified in parallel provisions of the Internal Revenue Code ("IRC" or the "Code"), 26 U.S.C. § 401 et seq. See, e.g., 29 C.F.R. § 2530.200a–1 (Treasury regulation governing the "Relationship of [ERISA] and the Internal Revenue Code of 1954" describing the parallel requirements of 26 U.S.C. §§ 410–11 "substantially identical."). Following the practice of the parties, the Court's citations are to ERISA, with references to the Code only where necessary.

2. Citations to "A" followed by a page number refer to the exhibits appearing in the two bound volumes that constitute the Appendix to Defendants' Motion for Summary Judgment.

(a) For years of credited service in the industry prior to January 1, 1976, he shall receive 1–1/2% of the maximum monthly benefit in effect at the time he ceased employment in the industry, multiplied by years of credited service earned prior to January 1, 1976, [PLUS]

(b) For years of credited service after January 1, 1976, he shall receive 3% of the maximum monthly benefit in effect at the time he ceased employment in the industry, multiplied by the number of years of credited service earned on or after January 1, 1976, [PLUS] 3% of (a) above multiplied by the number of years of credited service after January 1, 1976.

(c) in no event shall a participant receive more than 100% of the maximum monthly benefit in effect at the time he ceased employment in the industry.

1985 Plan, A270; 1995 Plan, A388–89.[3]

Under the plan, a "year of credited service" is defined as:

(1) for years prior to October 1, 1978, any year in which a participant had at least 400 hours of employment in the industry provided that such participant had an average of 700 hours employ-

ment per year during such years prior to October 1, 1978 and provided further no credit shall be given for any year(s) of employment occurring prior to a break in service which break in service occurred prior to January 1, 1976; and

(2) commencing October 1, 1978, any year in which a participant has at least 700 hours of employment in the industry.

1985 Plan, A228–29; 1995 Plan A351–52. Thus, the post-ERISA versions of the Plan retain the break in service provision of the 1950 Plan.

On November 14, 1995, the Plan was again amended, retroactive to January 1, 1976. 1995 Amendment, A122–23. As amended, the 1995 Plan provided that all vested participants would accrue[4] benefits in accordance with the VRP benefit formula above, and further provided that those eligible for the SRP and the VRP at retirement would receive the greater of the two benefits.[5] *Id.*

After the adoption of the 1995 Amendment, the Plan's actuary reviewed the Plan's records, and provided retroactive adjustments to some beneficiaries' pen-

---

**3.** The Plan was subsequently amended to provide that, for those retiring on or after October 1, 1996, benefits would accrue at the rate of $50/per month for each year of credited service up to a maximum of $2,000 per month. 1999 SPD, A551. The Plan, however, retains the 1985 benefit accrual formula for participants who retired before October 1, 1996. 1999 SPD, A552. Only the provision concerning benefit accruals for retirees prior to October 1, 1996 is at issue here. Accordingly, references to the Plan's accrual provisions are to the formula for pre-October 1, 1996 retirees.

**4.** As used in ERISA, the terms "vested" and "accrued" refer to two different, but related concepts. An employee's "vested" benefit refers to the portion of his normal retirement benefit that is "nonforfeitable," or unconditional and legally enforceable against the

Plan. 29 U.S.C. § 1002(19). In contrast, an employee's "accrued" benefit refers to the portion of his normal retirement benefit that the employee has earned at any given time. 29 U.S.C. § 1002(23)(A). An employee becomes fully vested when he has a nonforfeitable right to his entire accrued benefit. An employee accrues benefits both before and after he becomes vested in a portion of his accrued benefit. *See generally, Hoover v. Cumberland, Maryland Area Teamsters Pension Fund,* 756 F.2d 977 (3rd Cir.1985) (discussing the difference between "vested" and "accrued" benefits).

**5.** Thus, all vested participants would receive at least the benefits provided by the Plan's VRP formula. Some beneficiaries who qualified would receive benefits according to the old SRP schedule if those benefits are greater than those provided by the VRP.

sions without interest. Defs.' 56.1 Statement, ¶¶ 30–31; Affidavit of Joseph Rossetti, Executive Director of the Pension Plan ("Rosetti Aff."), ¶¶ 24–25. Defendants' actuary asserts, and plaintiff does not dispute,[6] that the defendants have made all adjustments required by the 1995 Amendment for all beneficiaries. Affidavit of Susan E. Lee, actuary at the Segal Company, ("Lee Aff."), ¶¶ 3–7.

Effective October 1, 1996, the Plan was amended to replace the previous SRP benefit formula with an accrued benefit of $50 per month for each year of credited service up to a maximum of $2,000 per month based on 40 years of credited service for those retiring after the effective date. Defs.' 56.1 Statement, ¶ 11, 1999 SPD, A551. Those retiring before October 1, 1996 continue to receive benefits based on the VRP formula in the 1995 Plan, as amended. The effect of this most recent amendment is not challenged in the present action, as plaintiff retired before its effective date. Thus, we do not address the question of whether the Plan's new benefit structure satisfies ERISA's requirements. Accordingly, all references to the Plan, unless otherwise specified, are to the 1995 Plan, as amended. We now turn to the plaintiff and his claims.

## B. The Plaintiff

Plaintiff, a former longshoreman, receives a lifetime pension from the Pension Plan. Plaintiff's Statement Pursuant to Local Rule 56 ("Pl.'s 56.1 Statement"), ¶ 1. Plaintiff first worked under the plan in 1953, and had sufficient hours under the terms of the plan to earn a year of credited service for each of the following thirteen years: 1953–60, 1963, 1965 and 1967–69. Pl.'s 56.1 Statement, ¶ 4. Plaintiff also worked sufficient hours to earn a year of credited service for the years 1973–74 and 1976–81, 1985 and 1986. *Id.* ¶ 3. In each of three consecutive years from 1970 through 1972, plaintiff failed to work a sufficient number of hours to earn a year of credited service, *Id.*, ¶ 5, and under the terms of the plan then in effect, suffered a break in service. 1950 Plan, A194.

The Board ruled that the plaintiff had only 10 years of credited service and was therefore not eligible for the SRP, but only for the VRP. November 14, 1995 Minutes of the Board, A104–111. Thus, defendants awarded plaintiff a VRP pension in the amount of $263.38 per month based on ten years of credited service subsequent to 1972, disregarding plaintiff's first 13 years of credited service under the break in service provision of the 1950 Plan. Pl.'s 56.1 Statement, ¶¶ 1,4. Defs.' 56.1 Statement, ¶ 21.

## C. Plaintiff's Claims

Plaintiff filed a nineteen count complaint challenging the Board's calculation of his pension and alleging various violations of ERISA. Claims one through ten seek class relief, while claims eleven through nineteen seek individual relief.[7] Six of the

---

**6.** Plaintiff's counsel asserts generally that defendants' actuary "has been wrong before" and could be wrong again concerning whether the Plan complies with ERISA's requirements. Affirmation of Edgar Pauk in Opposition to Motion for Summary Judgment ("Pauk Aff. in Opp'n"), ¶ 8. *See also* Pauk Aff. in Opp'n, ¶¶ 7–16. However, plaintiff counsel's affidavit consists largely of additional legal argument directed at whether the 1995 Plan (as modified by the 1995 Amendment) complies with ERISA, not whether the Plan has

complied with the 1995 Amendment. Thus, there appears to be no disputed material fact as to whether any beneficiaries are owed additional benefits under the terms of the 1995 Amendment. The question of whether the Plan, as amended, complies with ERISA, and the issue of interest on the retroactive payments are discussed *infra*.

**7.** Given our resolution of plaintiff's class claims, we need not reach the issue of class certification.

original nineteen claims were subsequently abandoned by the plaintiff or deemed moot by the parties.[8] Defendant seeks summary judgment on the thirteen remaining claims, while plaintiff seeks partial summary judgment on his first, second and eleventh claims. After setting forth the appropriate standard of review,[9] we turn first to the plaintiff's individual claims, followed by his class claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is properly granted " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' " *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (quoting Fed.R.Civ.P. 56(c)). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing the record, we must assess the evidence "in the light most favorable to the non-movant and . . . draw all reasonable inferences in his favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990).

The mere existence, however, of an alleged factual dispute between the parties will not defeat a motion for summary judgment. In order to defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505 (internal quotation omitted).

### II. Plaintiff's Individual Claims

#### A. *Application of the Plan's Pre-ERISA Break in Service Rules to Plaintiff's Accrued Benefit Violates ERISA*

Plaintiff's eleventh claim challenges defendants' application of the Plan's pre-ERISA break in service rules to exclude his thirteen years of pre-break credited service in calculating his accrued benefit. Compl. ¶¶ 94–102. With respect to plaintiff's eleventh claim for relief, for the reasons stated below, plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied.

Plaintiff contends that once he completed sufficient years of service to become a vested participant in the Plan, the Board could not disregard his first ten years of credited service in calculating his accrued

---

**8.** Plaintiff has abandoned claims 12, 13 and 14, and acknowledged that claims 3, 4, and 5 are now moot, *see* Pl.'s Mem. in Opp'n, p.20, n. 22. Accordingly, these claims are dismissed with prejudice.

**9.** Because our resolution of the present motions requires us to decide only whether the Plan complies with ERISA and not whether the defendants have complied with the terms

of the Plan, we need not decide whether the Plan's terms give the defendants discretionary authority to determine eligibility for benefits or interpret the Plan's terms, and thus need not decide whether the defendants actions would be reviewed for abuse of discretion or reviewed *de novo*. *See generally, Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

benefit based on his break in service.[10]

More specifically, the plaintiff contends that ERISA permits a plan to disregard service pursuant to its pre-ERISA break in service rules only for vesting purposes, and that once an employee's pension has vested, such service must be included in calculating the employee's accrued benefit. Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Mem."), at pp. 3–14; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion ("Pl.'s Opp'n Mem."), at pp. 4–8. In other words, plaintiff argues that all his years of service must be taken into account except those which can be disregarded under the permitted statutory exclusions for participation and accrual purposes.

Defendants, in contrast, contend that ERISA permits a plan to disregard service that would have been discredited under a plan's pre-ERISA break in service rules for accrual as well as vesting purposes. Defs.' Mem., at pp. 23–25; Defs.' Opp'n Mem., at pp. 1–3. Specifically, defendants argue that ERISA § 203(b)(1)(F), 29 U.S.C. § 1053(b)(1)(F), which permits a plan to apply its pre-ERISA break in service rules for vesting purposes, applies when determining the accrued benefit of a vested employee under ERISA § 204, 29 U.S.C. § 1054.

For the reasons discussed below, we conclude that the language and structure of ERISA §§ 202–204, 29 U.S.C. §§ 1052–54, provide ample support for the plaintiff's position. Moreover, regulations and other documents from the Internal Revenue Service and the Department of Labor support the same result. Accordingly, we find that ERISA § 203(b)(1)(F), 29 U.S.C. 1053(b)(1)(F), which permits plans to exclude, for vesting purposes, years of service that would have been disregarded under a pre-ERISA plan's break in service rules, is not applicable in determining the accrued benefit payable to an employee who has satisfied the vesting requirements. *But see, Jones v. UOP,* 16 F.3d 141 (7th Cir.1994) (holding that ERISA § 203(b)(1)(F) *is* applicable to accrued benefit calculations under ERISA § 204(b)(1)(D)); *Haas and Cass v. Boeing Co.,* 1992 WL 221335 (E.D.Pa.1992) (same), *aff'd without op.,* 993 F.2d 877 (3rd Cir. 1993).

1. *The Language and Structure of Sections 202–204 of ERISA*

The Supreme Court has recognized that ERISA is "an intricate, comprehensive statute." *Boggs v. Boggs,* 520 U.S. 833, 840, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). When construing ERISA, as with any other statute, our analysis "begins with 'the language of the statute.'" *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). *See also, e.g., Washington v. Schriver,* 240 F.3d 101, 108 (2d Cir.2001) (noting that the first step of statutory interpretation is to determine whether the language at issue has a "plain and unambiguous meaning with regard to the particular dispute in the case" as determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. Where the meaning of a statute is textually ambiguous, we may consult its legislative history.") (internal quotation marks and citations omitted).

If Congress has directly addressed "the precise question at issue," the Court, like administrative agencies, "must give effect

---

**10.** Plaintiff does not dispute that an employer may disregard service prior to a break in service as provided by ERISA § 204(b)(4)(A) and ERISA § 202(b)(2)-(4) (discussed *infra*). However, it is undisputed that plaintiff did not incur such a break in service.

to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If Congress has not addressed the precise question at issue, the question for the Court is "whether the agency's answer is based on a permissible construction of the statute." *Id.* In addressing the second step of the *Chevron* inquiry, the Court "need not conclude that the agency construction was the only one it permissibly could have adopted," *id.* at 843, 104 S.Ct. 2778, and "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 843 n. 11, 104 S.Ct. 2778.[11]

We find that, through the language of ERISA §§ 202—204, Congress has addressed the precise question at issue here and answered it in the plaintiff's favor. Moreover, even if the precise question at issue here is not resolved by reference to the Act's text, the agencies charged with interpreting the Act have given the same answer, which even if not required by the statutory text, is a reasonable interpretation of the relevant statutory language.

In passing ERISA, Congress found that "many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans." 29 U.S.C. § 1002(a). ERISA was designed to reduce, by various means, the number of employees losing expected pension benefits. *See, e.g., Du-*

chow *v. New York State Teamsters Conference Pension & Ret. Fund,* 691 F.2d 74, 76 (2d Cir.1982); *Carollo v. Cement & Concrete Workers Dist. Council Pension Plan,* 964 F.Supp. 677, 681 (E.D.N.Y.1997). *See also Smith v. Contini,* 205 F.3d 597, 604 (3rd Cir.2000) ("Congress's chief purpose in enacting [ERISA] was to ensure that workers received promised pension benefits upon retirement."). To this end, ERISA provides detailed regulations concerning employee participation, vesting and accrual governing employee benefit plans. *See* ERISA § 202, 29 U.S.C. § 1052 ("Minimum participation standards"); ERISA § 203, 29 U.S.C. § 1053 ("Minimum vesting standards"); ERISA § 204, 29 U.S.C. § 1054 ("Benefit accrual requirements").

### (a) *ERISA § 202—Minimum Participation Standards*

ERISA § 202 sets forth the "Minimum participation standards" governing the limits employers may impose on employee participation in benefit plans. *See* 29 U.S.C. § 1052. Specifically, ERISA § 202(a)(1)(A) mandates that "[n]o pension plan may require, as a condition of participation in the plan, that an employee complete a period of service" extending beyond the later of the date on which the employee attains 21 years of age, 29 U.S.C. § 1052(a)(1)(A) (i), or completes 1 year of service,[12] 29 U.S.C. § 1052(a)(1)(A)(ii).

ERISA § 202(b) further provides:

> For purposes of this section, the term 'year of service' means a 12–month period during which the employee has not less than 1,000 hours of service. For purposes of this paragraph, computation of any 12–month period shall be made with reference to the date on which the employee's employment commenced, except that, in accordance with the regulations provided by the Secretary [of Labor], such computation may be made

---

**11.** An agency's reconciliation of conflicting policies that are committed to its discretion should not be disturbed unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. *Chevron,* 467 U.S. at 845, 104 S.Ct. 2778.

**12.** ERISA § 202(a)(3)(A) defines a "year of service" as follows:

(1) Except as otherwise provided in paragraphs (2), (3), and (4) *all years of service* with the employer or employers maintaining the plan *shall be taken into account* in computing the period of service for purposes of subsection (a)(1) of this section.

29 U.S.C. § 1052(b)(1) (emphasis added). Thus, for purposes of an employee's participation in a plan, ERISA requires that "all years of service" be taken into account, with certain enumerated exceptions. Those exceptions, set forth in ERISA § 202(b)(2)-(4), 29 U.S.C. §§ 1052(b)(2)-(4), (collectively, "participation exceptions" or "section 202(b) exceptions")[13] do not in-

by reference to the first day of a plan year in the case of an employee who does not complete 1,000 hours of service during the 12–month period beginning on the date his employment commenced.

29 U.S.C. § 1052(a)(3)(A). There is no dispute that a plan's terms may define a "year of service" more generously by requiring fewer than 1,000 hours of service in a 12–month period.

**13.** The participation exclusions set forth in ERISA 202(b)(2)-(4) provide:

(2) In the case of any employee who has any 1–year break in service (as defined in section 1053(b)(3)(A) of this title) under a plan to which the service requirements of clause (i) of subsection (a)(1)(B) of this section apply, if such employee has not satisfied such requirements, service before such break shall not be required to be taken into account.

(3) In computing an employee's period of service for purposes of subsection (a)(1) of this section in the case of any participant who has any 1–year break in service (as defined in section 1053(b)(3)(A) of this title), service before such break shall not be required to be taken into account under the plan until he has completed a year of service (as defined in subsection (a)(3) of this section) after his return.

(4) (A) For purposes of paragraph (1), in the case of a nonvested participant, years of service with the employer or employers maintaining the plan before any period of consecutive 1–year breaks in service shall not be required to be taken into account in computing the period of service if the number of consecutive 1–year breaks in service within such period equals or exceeds the greater of -

(i) 5, or

(ii) the aggregate number of years of service before such period.

(B) If any years of service are not required to be taken into account by reason of

a period of breaks in service to which subparagraph (A) applies, such years of service shall not be taken into account in applying subparagraph (A) to a subsequent period of breaks in service.

(C) For purposes of subparagraph (A), the term "nonvested participant" means a participant who does not have any nonforfeitable right under the plan to an accrued benefit derived from employer contributions.

29 U.S.C. § 1052(b)(2)-(4).

Subparagraph (b)(2) pertains to plans requiring "2 years of service" or educational organizations under § 202(a)(1)(B)(i) or (ii). 29 U.S.C. § 1052(b)(2). Subparagraph (b)(3) permits the exclusion of one year breaks in service until an employee has completed one year of service upon his return. 29 U.S.C. § 1052(b)(3). Subparagraph (b)(4) permits the exclusion of consecutive one year breaks in service where the number of such breaks exceeds either "5 or the aggregate number of such years of service before such period." 29 U.S.C. § 1052(b)(4). The exclusion set forth in subparagraph (b)(4) is sometimes referred to as the "Rule of Parity." It is undisputed that plaintiff's pre-break service may not be disregarded for participation purposes under these exclusions.

29 U.S.C. 1053(b)(3)(A), referenced in subparagraphs (b)(2) and (3), defines a "1 year break in service" as "a calendar year, plan year, or other 12–consecutive–month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) during which the participant has not completed more than 500 hours of service." 29 U.S.C. § 1053(b)(3)(A).

Elsewhere, an employee's "years of service" excluding those specified in ERISA § 202(b) are referred to as "years of participation." *See, e.g.,* ERISA § 1054(b)(1)(D); ERISA § 1054(b)(4)(A).

clude an exclusion for service subject to a plan's pre-ERISA break in service provisions, and as noted at the margin, would not exclude plaintiff's pre-break service. *See* 29 U.S.C. §§ 1052(b)(2)-(4).

(b) *ERISA § 203—Minimum Vesting Standards*

Section 203 sets forth the "minimum vesting standards" for plans subject to ERISA. 29 U.S.C. § 1053. A defined benefit plan satisfies the minimum vesting requirements pertaining to employer contributions if it provides either than an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions, 29 U.S.C. § 1053(a)(2)(A), or satisfies the vesting schedule set forth in subparagraph (a)(2)(B) for employer contributions. Under either method, the minimum vesting standards are based on the employee's "period of service." 29 U.S.C. § 1053(a)(2).

Computation of an employee's period of service for vesting purposes is governed by ERISA § 203(b) which provides, in part:

(1) In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:

. . . . .

(F) years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date. . . .

29 U.S.C. § 1053(b)(1)(F).[14] Thus, Congress has explicitly provided that years of service prior to the enactment of ERISA which "would have been disregarded" under a plan's pre-ERISA break in service rules may be disregarded when calculating an employee's period of service for vesting purposes.

(c) *ERISA § 204—Benefit Accrual Requirements*

Section 204 of ERISA, 29 U.S.C. § 1054, sets forth ERISA's "benefit accru-

---

**14.** In addition to subparagraph (b)(1)(F), ERISA § 203(b)(1) also excludes other periods of service for vesting purposes including:

(A) years of service before age 18[;]

(B) years of service during a period for which the employee declined to contribute to a plan requiring employee contributions[;]

(C) years of service with an employer during any period for which the employer did not maintain the plan or a predecessor plan, defined by the Secretary of the Treasury;

(D) service not required to be taken into account under paragraph (3);

(E) years of service before January 1, 1971, unless the employee has had at least 3 years of service after December 31, 1970; . . . and

(G) in the case of a multi-employer plan, years of service—

(i) with an employer after—
(I) a complete withdrawal of such employer from the plan (within the meaning of section 1383 of this title), or
(II) to the extent permitted by regulations prescribed by the Secretary of the Treasury, a partial withdrawal described in section 1385(b)(2)(A)(i) of this title in connection with the decertification of the collective bargaining representative; and
(ii) with any employer under the plan after the termination date of the plan under section 1348 of this title.

29 U.S.C. § 1053(b)(1) (collectively, "vesting exclusions," or, excluding § 203(b)(1)(F), "other vesting exclusions"). For purposes of the minimum vesting standards, ERISA § 203(b)(2)(A) and (b)(3)(A) define the terms "year of service" and "1–year break in service" respectively. 29 U.S.C. § 1053(b)(2)(A); 29 U.S.C. § 1053(b)(3)(A).

al requirements" and requires defined benefit plans to satisfy the requirements of subsection (b)(1). *See* ERISA § 204(a)(1), 29 U.S.C. § 1054(a)(1). Subsection (b)(1) requires defined benefit plans to satisfy one of three alternative accrual schedules. *See* ERISA § 204(b)(1)(A) (3% accrual schedule), 29 U.S.C. § 1054(b)(1)(A); ERISA § 204(b)(1)(B) (133 ⅓ percent accrual schedule), 29 U.S.C. § 1054(b)(1)(B); ERISA § 204(b)(1)(C) (fractional schedule), 29 U.S.C. § 1054(b)(1)(C).

The parties agree that the only accrual formula relevant to defendants' plan is the 3% accrual schedule, which provides in part:

(1)(A) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which each participant is entitled upon his separation from the service is not less than—

(i) 3 percent of the normal retirement benefit to which he would be entitled at the normal retirement age if he commenced participation at the earliest possible entry age under the plan and served continuously until the earlier of age 65 or the normal retirement age specified under the plan, multiplied by

(ii) the number of years (not in excess of 33 1/3) of his participation in the plan.

29 U.S.C. § 1054(b)(1)(A). Thus, for years of participation subsequent to the enactment of ERISA, to satisfy the 3% accrual method, a plan must provide that an employee accrue a least 3 percent of his normal retirement benefit multiplied by his years of participation in the plan. *See id.*

For pre-ERISA service, the Act provides that an employee's years of service prior to its enactment date are to be retroactively credited, but at a reduced rate. *See* 29 U.S.C. § 1054(b)(1)(D). Accrual for pre-ERISA years of participation are governed by ERISA § 204(b)(1)(D), which provides:

(D) Subparagraphs (A), (B), and (C) shall not apply with respect to years of participation before the first plan year to which this section applies but a defined benefit plan satisfies the requirements of this subparagraph with respect to such years of participation only if the accrued benefit of any participant with respect to such years of participation is not less than the greater of—

(i) his accrued benefit determined under the plan, as in effect from time to time prior to September 2, 1974, or

(ii) an accrued benefit which is not less than one-half of the accrued benefit to which such participant would have been entitled if subparagraph (A), (B), or (C) applied with respect to such years of participation.

29 U.S.C. § 1054(b)(1)(D). In other words, for years of participation prior to the enactment of ERISA, an employee must receive the greater of either one half the amount he would have received under ERISA § 204(b)(1)(A)-(C) or the full amount he would have received under the terms of the plan.

As discussed above, the 3% accrual formula requires that an employee accrue at least 3% of his normal retirement benefit for each year of participation to which ERISA § 204(b)(1)(A) applies. *See* 29 U.S.C. § 1054(b)(1)(A). Thus, an employer who elects to meet the 3% method for calculating the employee's accrued benefit for pre-ERISA service must provide the employee with the greater of either his accrued benefit under the terms of the plan, 29 U.S.C. § 1054(b)(1)(D)(i), or one half the amount he would have received under ERISA § 204(b)(1)(A) based on that section's formula of 3 percent multiplied by

the employee's number of years of participation. *See* ERISA § 204(b)(1)(A), 29 U.S.C. § 1054(b)(1)(A); ERISA § 204(b)(1)(D)(i), 29 U.S.C. § 1054(b)(1)(D)(i).[15]

For accrual purposes, a "year of participation," is in turn defined by ERISA § 204(b)(4)(A):

(4)(A) For purposes of determining an employee's accrued benefit, the term "year of participation" means a period of service (beginning at the earliest date on which the employee is a participant in the plan and which is included in a period of service required to be taken into account under section 1052(b) of this title, determined without regard to section 1052(b)(5) of this title) as determined under regulations prescribed by the Secretary which provide for the calculation of such period on any reasonable and consistent basis.

29 U.S.C. § 1054(b)(4)(A). Thus, in determining the number of years of participation for purposes of calculating an employee's accrued benefit under the 3% accrual schedule, ERISA § 204(b)(1)(A) explicitly requires a plan to count all of an employee's years of participation "beginning at the earliest date on which the employee is a participant" and which is "included in a period of service required to be taken into account under [ERISA's participation provisions]," discussed above.

As noted previously, ERISA's participation provisions require that *"all* service with the employer or employers maintaining the plan *shall* be taken into account in computing the period of service" subject only to the participation exclusions contained in ERISA § 202(b)(2)-(4). 29 U.S.C. 1052(b)(1) (emphasis supplied). Those exclusions do not contain the vesting exclusions set forth in ERISA § 203(b)(1) (such as the exclusion of service that would be disregarded under the terms of the pre-ERISA plan's break in service rules under § 203(b)(1)(F)).

#### (d) *Discussion*

 While ERISA's participation, vesting and accrual provisions are complicated and densely worded, we think their requirements are clear. ERISA § 204(b)(1)(D) provides for accrual for pre-ERISA service in accordance with an employee's "years of participation" rather than an employee's "period of service" or "years of service." 29 U.S.C. § 1054(b)(1)(D). *See also,* 29 U.S.C. § 1054(b)(1)(A) (calculating 3% benefit based on years of participation). Moreover, ERISA § 204(b)(4)(A) explicitly defines the term "year of participation" as beginning on "the earliest date" on which an employee is a participant and which is included in the period of service "required to be taken into account under section 1052(b) of this title [i.e. ERISA § 202(b)]." 29 U.S.C. § 1054(b)(4)(A). Thus, Congress has explicitly provided that, for accrual purposes, an employer is to include all of an employee's years of participation "beginning at the earliest date on which the employee is a participant" and which is included in a period of service required to be taken into account under ERISA

---

**15.** ERISA's requirements for providing pre-ERISA accrual under section 204(b)(1)(D) in conjunction with the three percent method are actually considerably more complex, requiring, in essence, that the portion of the normal 3% benefit which is not accrued in pre-ERISA years accrue during the employee's post-ERISA years in accordance with the rules of the 3% method. The IRS's regulations provide detailed guidelines for how to satisfy this requirement. *See* 26 C.F.R. § 1.411(b)–1(c)(2)(v). We believe, and the parties do not dispute, that the Plan's accrual formula satisfies this requirement.

§ 202(b). *See* 29 U.S.C. § 1054(b)(4)(A); 29 U.S.C. § 1052(b).

In other words, an employee's accrued benefit is calculated using all years in which he was a participant under the participation provisions of ERISA § 202(b), not the vesting provisions of ERISA § 203(b). Thus, in calculating a vested employee's accrued benefit, employers may not disregard service except as provided by ERISA § 202(b), and may not exclude years of service based on a plan's pre-ERISA break in service rules. Where the language of a statute is clear, we presume Congress intended the result of the language it employed.

Had Congress meant to permit the exclusion of an employee's years of service under a plan's pre-ERISA rules for accrual purposes, it would not have used the words "years of participation" in the accrual section. Moreover, Congress clearly could have employed the language to permit the exclusion of service under a plan's pre-ERISA rules for accrual purposes, as it did in the section governing vesting. Instead, the enumerated participation and vesting exclusions are different. ERISA § 202(b) does not exclude years of service that would "have been disregarded under the rules of the plan with regard to breaks

in service" as in effect prior to the enactment of ERISA. *Compare* ERISA § 203(b)(1)(F), 29 U.S.C. § 1053(b)(1)(F) (providing for such an exclusion for vesting purposes). At a minimum, Congress could have cross-referenced the definition of "year of participation" for accrual purposes to ERISA § 203(b) (which, as noted, permits such an exclusion for vesting) rather than to ERISA § 202(b) (which does not).[16] Congress did not do so, however.

### 2. *Agency Regulations and Opinion Letters*

Regulations issued by the Internal Revenue Service and the Department of Labor,[17] as well as letters and other documents from the Internal Revenue Service support the conclusion that employers may not apply pre-ERISA break-in-service rules in calculating benefit accrual. We turn first to the agencies' regulations.

### (a) *Labor Department Regulations*

The Secretary of Labor has issued rules and regulations for minimum standards for pension plans concerning an employee's participation, vesting and accrual under ERISA. *See* 29 · C.F.R. §§ 2530.202–2530.204. Under these regulations, the

---

**16.** In reaching this conclusion we note that commentators have been aware of the plain meaning of ERISA's terms in this regard since shortly after the Act's passage, *see, e.g., Application of ERISA to Pre–ERISA Service,* 2 Pension & Profit Sharing Tax J. 205 (1976) (discussing the application of break-in-service rules to pre-ERISA service under the participation, vesting and accrual sections), and that Congress has frequently amended the Act without altering the provisions at issue here, *see, e.g.,* John Langbein & Bruce Wolk, *Pension and Employee Benefit Law,* 89–90 (listing subsequent amendments to ERISA).

**17.** Both the Secretary of Labor and the Secretary of the Treasury have issued regulations concerning ERISA, 29 U.S.C. § 1001 et seq.,

and its parallel provisions in the Code, 26 U.S.C. §§ 410–11. *See, e.g.,* 29. C.F.R. § 2530 (Labor Department Regulations); 26. C.F.R. §§ 410–11 (Treasury Department Regulations). *See also, Esden v. Bank of Boston,* 229 F.3d 154, 157 n. 2. (2d Cir.2000) (citation omitted). While the Secretary of Labor has authority to define certain terms (including "years of service," "years of participation" and "breaks in service"), *see* 29. C.F.R. § 2530.200a–2, the IRS has primary jurisdiction and rule-making authority over ERISA's participation, benefit accrual and vesting provisions. *See Esden,* 229 F.3d at 157 n. 2. *See also* 29 C.F.R. § 2530.200a–2 (providing that the IRS's regulation "shall be used to implement" the relevant provisions of ERISA).

rules governing years of participation and breaks in service for vesting purposes are distinct from the rules for accrual purposes. *See* 29 C.F.R. § 2530.200b–4.[18]

29 C.F.R. § 2530.204–1, entitled "Year of participation for benefit accrual," governs the years of participation that must be taken into account for purposes of benefit accrual under a defined benefit plan. 29 C.F.R. § 2530.204–1(a). The regulation specifies which service "may be disregarded for purposes of benefit accrual" 29 C.F.R. § 2530.204–1(b).[19] As discussed at the margin, the exclusion contained in ERISA § 203(b)(1)(F) permitting plans to disregard for vesting purposes service which would have been disregarded under a pre-ERISA plan's break in service rules, is not incorporated into the service which may be disregarded for accrual purposes.

Defendant cites 29 C.F.R. § 2530.204–2(b) for the proposition that years of participation may be disregarded for accrual purposes based on a plan's pre-ERISA break in service rules.[20] Defs.' Mem., p.

---

**18.** This regulation, governing the computation of one year breaks in service and service following a break in service, specifies that such matters are to be calculated differently, under different subsections of the Secretary of Labor's regulations, for purposes of eligibility to participate, vesting, and accrual. *See* 29 C.F.R. § 2530.200b–4(2)–(4). Eligibility to participate is to be computed in accordance with § 2530.202–2(b) for measuring years of service after the initial eligibility computation period. Vesting is to be computed in accordance with the vesting computation period set forth in § 2530.203–2(a). Likewise, benefit accrual is to be computed in accordance with § 2530.204(b)(1). *See* 29 C.F.R. § 2530.200b–4(2)–(4).

**19.** The regulation provides that for such a calculation, "the following service" may be disregarded:

service before an employee first becomes a participant in the plan; service which is not required to be taken into account under section 202(b) of the Act and section 410(b)(5) of the Code (relating to one-year breaks in service for purposes of eligibility to participate); and service which is not required to be taken into account under sections 204(b)(3)(C) of the Act and section 411(b)(3)(C) of the Code (relating to 12–consecutive–month periods during which an employee's service is less than 1,000 hours). In addition, ... a defined benefit plan shall not be required to take into account service before the conclusion of a series of consecutive 1–year breaks in service occurs which permit a plan to disregard prior service under section 203(b)(3)(D) of the Act and section 411(a)(6)(D) of the Code.

29 C.F.R. § 2530.204–1(b)(1). None of the enumerated exclusions permit the exclusion of service under a plan's pre-ERISA break in service rules.

Initially, plaintiff challenged the validity of the last sentence quoted above as purportedly authorizing such an exclusion, Compl. ¶¶ 99–101. However, the language following the words "in addition" does not purport to permit the exclusion of service under a plan's pre-ERISA break in service rules under ERISA § 203(b)(1)(F). Instead, this language permits the exclusion of service prior to a series of breaks under the so-called "Rule of Parity" under § 203(b)(3)(D), rather than § 203(b)(1)(F).

Thus, we find this regulation strongly supportive of plaintiff's interpretation of the requirements of ERISA concerning vesting and accrual. The Secretary of Labor's regulations specifically provide that, for accrual, service may be excluded under the rules contained in § 202(b) of the Act (pertaining to eligibility to participate), not § 203(b) (pertaining to vesting). Furthermore, the fact that the Secretary of Labor has cross-referenced one subsection of the vesting rules, § 203(b)(3)(D), as applicable, but not § 203(b)(1)(F) (or indeed all of § 203), supports the conclusion that the relevant exclusion for service under pre-ERISA break in service plan rules for vesting purposes, ERISA § 203(b)(1)(F), does not apply to the calculation of an employee's accrued benefit.

**20.** The relevant portion provides:

For purposes of applying the accrual rules of section 204(b)(1)(D) of the Act and section 411(b)(1)(D) of the Code (relating to accrual requirements for defined benefit

23. However, section 2530.204–2(b) explicitly provides that *"all service from the date of participation in the plan,* as determined in accordance with applicable plan provisions, shall be taken into account" in determining an employee's period of service for benefit accrual purposes. 29 C.F.R. § 2530.204–2(b)(emphasis added). Thus, as in the Act's text, the Labor Department regulations require *all service* from an employee's date of *participation* in the plan is to be taken into account in determining an employee's accrued benefit. This is a reasonable interpretation of the relevant statutory language, and is entitled to deference. *See, e.g., Chevron,* 467 U.S. at 843–45, 104 S.Ct. 2778.

While plaintiff argues that the clause "as determined in accordance with the applicable plan provisions" incorporates a plan's pre-ERISA break in service rules, we believe that what is to be determined in "accordance with applicable plan provisions" is clearly the employee's "date of participation." The remainder of the paragraph, which sets forth a presumption for determining an employee's "date of commencement of participation," leads us to

conclude that no incorporation of a plan's pre-ERISA break rules was intended.[21] Thus, a vested employee's accrued benefit is to be determined in accordance with the participation provisions set forth in ERISA § 202(b)(eligibility to participate) rather than the vesting provisions of ERISA § 203(b)(1).[22]

(b) *Treasury Department Regulations*

Like the Secretary of Labor's regulations, the regulations issued by the Secretary of the Treasury ("Treasury regulations" or "IRS regulations") also support the conclusion that a vested employee's pre-ERISA years of participation may not be disregarded for accrual purposes under the exclusion provided in ERISA § 203(b)(1)(F) for vesting purposes.

First, the IRS Regulations incorporate the "rules relating to years of service" issued by the Secretary of Labor, and thus adopt the interpretations of the Department of Labor. 26 C.F.R. § 1.410(a)–5(a)(years of service and breaks in service for purposes of eligibility to participate);

plans for periods prior to the effective date of those sections), all service from the date of participation in the plan as determined in accordance with the applicable plan provisions, shall be taken into account in determining an employee's period of service. When the plan documents do not provide a definite means for determining the date of commencement of participation, the date of commencement of employment covered under the plan during the period that the employer maintained the plan shall be presumed to be the date of commencement of participation in the plan. . . .
29 C.F.R. § 2530.204–2(b).

21. *Compare* 29 C.F.R. § 2530.204–2(c)(3)(governing partial years of participation and referring to the time "an employee commences in participation in a plan *(or recommences* participation in the plan upon the employee's return after one or more 1–year breaks in service)")(emphasis added).

22. *Cf.* 29 C.F.R. § 2530.200b–4, example (i)(B)(concerning another vesting exclusion). The example addresses years of employee service prior to age 21, a permitted exclusion under the vesting rules, *see* ERISA § 203(b)(1)(A), but not under the participation rules of ERISA § 202(b)(1). The detailed example for a hypothetical employee makes clear that the rules governing participation, "beginning on his employment commencement date" govern the number of years of credited service he is to receive for participation, while the vesting rules lead to a different result governing his length of service for vesting. *See* 29 C.F.R. § 2530.200b–4(Ex.(i)(B)). As noted *supra,* the accrual calculation rules incorporate the rules governing eligibility to participate rather than those governing vesting.

26 C.F.R. § 1.411(a)–1(a)(6) (years of service and breaks in service for vesting purposes). *See also* 26 C.F.R. § 1.411(b)–1(c)("Accruals for service before effective date" of ERISA)(referencing 29 C.F.R. 2530, "for time participation deemed to begin").

Second, while the IRS Regulations relating to vesting contain an exclusion for service which would have been disregarded under a plan's pre-ERISA break in service rules, *see* 26 C.F.R. § 1.411(a)—5, the regulations governing years of service and breaks in service for participation purposes, 26 C.F.R. § 1.410(a)–5, do not. *See* 26 C.F.R. § 1.410(a) –5(c). The portion of the IRS Regulations concerning "accruals for service before the effective date" provide for the calculation of an employee's service based on his *participation* and do not appear to exclude any years of participation based a plan's pre-ERISA break in service rules. *See* 26 C.F.R. § 1.411(b)–1(c)(1).[23] *See also* 26 C.F.R. § 1.411(b)–1(f) (defining a "year of participation" for "purposes of determining an employee's accrued benefit" by reference to the regulations prescribed by 29 C.F.R. 2530). The IRS's regulations, like those of the Department of Labor, are reasonable interpretations of the relevant statutory language, and are entitled to deference. *See, e.g., Chevron,* 467 U.S. at 843–45, 104 S.Ct. 2778.

Finally, the IRS's letters [24] interpreting its own regulations, discussed below, support the same conclusion.

**23.** 26 C.F.R. § 1.410(b)–1(c)(1) provides than an employee's accrued benefit shall be not less than the greater of his accrued benefit under the terms of the plan as in effect prior to September 2, 1974 or:

One-half of the accrued benefit that would be determined with respect to the participant as of the day before section 411 [of the Code] applies if the *participant's accrued benefit* were computed for such prior plan years under a method which satisfies the requirements of section 411(b)(1)(A), (B), or (C) and paragraph (b)(1), (2) or (3) of this section. See 29 C.F.R. Part 2530, Department of Labor regulations relating to minimum standards for employee pension benefit plans, for time *participation* deemed to begin.

26 C.F.R. § 1.410(b)–1(c)(1) (emphasis added).

In addition, the regulation provides that for purposes of meeting the 3% rule, the subsection quoted above "shall be applied as if the participant separated from service with the employer on the day before the first day of the first plan year to which section 411 [of the Code] applies." 26 C.F.R. § 1.410(b)–1(c)(2)(ii).

We do not believe this language incorporates a plan's pre-ERISA break in service rules. Instead, by providing for the date on which an employee is to be deemed separated from service, it appears that the regulations contemplate the inclusion of all years of service for which an employee has sufficient hours to be credited with a year of participation, from the time he commences participation to the time he is deemed to have been separated from service.

Thus, Like the Secretary of Labor's regulations, the Secretary of the Treasury's regulations appear to interpret the accrual rules of the Code (paralleling ERISA § 204(b) governing accrual) as based on an employee's participation as determined under the plan as it applied prior to ERISA's enactment, and appear to require all of an employee's years of service to be considered for accrual purposes subject only to those exclusions for purposes of eligibility to participate found in § 202 of the Act and § 410 of the Code.

**24.** Plaintiff's counsel has submitted an IRS information letter dated March 13, 2000, Pl.'s Ex J. ("IRS's March 13 letter"), a subsequent clarifying letter dated September 8, 2000 ("IRS's September 8 letter"), and IRS Document 6390, Pl's Ex. K. Plaintiff has also written letters to the Departments of Labor and the Treasury inviting them to participate in the present case.

Moreover, by letter dated April 6, 2000, the Court wrote to the Department of Labor inviting that agency to intervene, as *amicus curiae* or otherwise. By letter dated May 3, 2000, the Department of Labor indicated that the agency would not participate, but would for-

### (c) *IRS's Interpretation of its Regulations*

An agency's reasonable, consistently held interpretation of its own regulation is entitled to deference. *See, e.g, Esden v. Bank of Boston,* 229 F.3d 154, 168 (2d Cir.2000) (citation omitted). Provided an agency's interpretation does not violate the Constitution [25] or a federal law, is not plainly erroneous or inconsistent with the regulation, it must be given controlling weight. *See id.* (citations omitted).

The IRS's February 14 letter "conveys the views of the Office of Chief Counsel [of the IRS], which is vested with interpretive authority over the regulations" at issue here. IRS Opinion Letter, p. 1. As such, it is entitled to deference. *See, e.g., Chevron,* 467 U.S. at 844, 104 S.Ct. 2778. At a minimum, it is "entitled to respect." *See, e.g., Esden,* 229 F.3d at 169 n. 19 (deferring to IRS Notice, and noting that IRS's " 'rulings, interpretations and opinions' remain a 'body of experience and informed judgment to which courts and litigants may properly resort to for guidance,' even when they do not authoritatively control courts.") (citations omitted).

The IRS's February 14 letter interpreting the relevant provisions of the Act provides that "unless an employee's pre-ERISA years of service can be disregarded under the specific break-in-service rules set forth in [ERISA § 202(b)(1)—(4)],

ward our request to the Treasury for review. No response from the Department of the Treasury was received.

However, on December 13, 2000, with the assistance of the U.S. Attorney's Office for the Southern District of New York, the Court again requested the views of the Department of Labor and/or the Department of the Treasury. While not intervening in the action on the merits or filing an *amicus* brief, the IRS agreed to provide a response on the legal issue presented here. The Court received a letter dated February 14, 2001, ("Opinion Letter" or "IRS's February 14 letter") indicated that in the opinion of the IRS, all years of service should be taken into account in calculating an employee's accrued benefit except as provided in the rules for employee participation discussed *supra.*

**25.** At the eleventh hour, defendants attempt to argue that ERISA's retroactive creation of contractual rights for pre-ERISA service violate the Fifth Amendment of the Constitution. Defs.' February 26, 2001 letter. It is not apparent to the Court how defendants would differentiate the retroactive imposition of liability on employers for pre-ERISA service through disallowing breaks-in-service from employees' accrued benefits from the retroactive imposition of liability on employers for years of employee service prior to ERISA without regard to breaks-in-service, or indeed, from any of the many portions of the Act which impose retroactive liability.

We note that the Supreme Court has consistently upheld aspects of ERISA that have imposed retroactive liability on employers. For example, retroactive withdrawal liability under ERISA, as amended by the Multi-employer Pension Plan Amendments Act, has been upheld against substantive and procedural Due Process challenges under the Fifth Amendment. *See Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 636–38, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (holding that "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature acted in an arbitrary and irrational way" and that legislation is not arbitrary or irrational merely because it "upsets settled expectations" or "impose[s] a new duty or liability based on past acts."); *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728–30, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (same). *Cf. Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (Fifth Amendment takings clause).

As the Fifth Amendment issue has not been briefed, and as defendants have offered no reason why this argument was not included in its motion papers, if indeed it is seriously advanced, the Court will not consider this argument further.

such pre-ERISA service *must* be taken into account for the purpose of determining that employee's accrued benefit under the benefits plan in question." IRS Opinion Letter, p. 2 (emphasis added).[26] This is a reasonable interpretation of the statutory language and the regulations issued by both the Departments of Labor and the Treasury, and is not clearly erroneous. Thus, in calculating an employee's accrued benefit, an employer must include all of the employee's years of service, except those which may be excluded for participation under ERISA § 202(b)(1)-(4).

### 3. *Contrary Decisions and the Legislative History*

Although the language of the Act itself, the relevant agency regulations, and the IRS's interpretations of those regulations all support plaintiff's position, the defendants nevertheless urge the Court to follow two decisions which have held that ERISA § 203(b)(1)(F) is applicable to accrued benefit calculations under ERISA § 204(b)(1)(D).[27] *Jones v. UOP*, 16 F.3d 141 (7th Cir.1994); *Haas and Cass v. Boeing Co.*, 1992 WL 221335 (E.D.Pa.1992), *aff'd without op.*, 993 F.2d 877 (3rd Cir. 1993). We decline to do so.

We note that in *Jones*, the employee in question had received credit for his pre-break service under another pension plan, yet sought to receive "in effect, double credits" for the same years under the plan at issue there. 16 F.3d at 144. While we agree with the *Jones* Court that ERISA § 204 is intended to prevent back-loading in contravention of ERISA § 203's vesting requirements,[28] *see id*, we believe that the plain language of ERISA § 204(b)(1)(D), which requires certain benefit accrual for pre-ERISA "years of participation," and ERISA § 204(b)(4)(A) (which explicitly defines the term "year of participation" in reference to ERISA's participation requirements), precludes a plan from excluding years of service based on its pre-ERISA break in service rules when calculating an employees accrued benefit.

In contrast, the *Haas* Court based its decision on an excerpt from the legislative

**26.** We note that the IRS's March 13 and September 8 letters to plaintiff's counsel, while of little evidentiary weight, *see Esden*, 229 F.3d at 175, and the IRS document submitted by the plaintiff (which we assume is likewise of little, if any, weight) support the same conclusion.

**27.** The other cases cited by the defendants are not helpful, as they assume the applicability of ERISA § 203(b)(1)(F) to benefit accrual without analysis. *See, e.g., Redmond v. Burlington N.R.R. Pension Plan*, 821 F.2d 461 (8th Cir. 1987); *Tanzillo v. Local Union 617*, 769 F.2d 140 (3d Cir.1985); *Jameson v. Bethlehem Steel Corp.*, 634 F.Supp. 688 (E.D.Pa.1986), *aff'd without op.*, 802 F.2d 447 (3d Cir.1986), *cert. denied* 479 U.S. 1089, 107 S.Ct. 1297, 94 L.Ed.2d 153 (1987).

**28.** While the *Jones* Court asserts that there is no indication that Congress meant to treat breaks in service differently for vesting and accrual purposes, *see id.* at 143–44, we believe

that the language Congress employed does indicate such an intent. Congress was certainly cognizant of the effect that break in service provisions have on pension benefits. Faced with the task of balancing the goal of providing employees with expected benefits against the goal of containing costs imposed on employers, Congress has decided when such break in service provisions may be applied. *See, e.g.,* 29 U.S.C. §§ 1054(b)(2)-(5), 1053(b)(1)-(3). Congress could have rationally concluded that limiting the pool of employees to whom benefits would need to be paid through a vesting exclusion, while providing accrual of benefits to all employees entitled to receive them based on all years of participation without such an exclusion, best balanced these competing goals. While another Congressional choice may have proved more administrable, if the balance is to be restruck, it is a job for Congress, not the courts.

history.[29] *See* 1992 WL 221335, at *4. First, in light of the language of the Act, the implementing regulations and the authoritative interpretation of the IRS, we do not believe it is necessary to delve into the legislative history. Second, when read in its entirety,[30] we do not believe this passage evinces a clear legislative intent to

**29.** With respect to the legislative history, we note that the Second Circuit has not resolved the question of whether legislative history is more appropriately considered under Step I or Step II of the *Chevron* analysis. *See, WLNY–TV, Inc. v. FCC*, 163 F.3d 137, 143, n. 3 (2d Cir.1998). We need not decide the question, as our evaluation of the legislative history would lead to the same result at either stage of the analysis.

**30.** The relevant passage of the legislative history, provides:

Under the conference substitute, a 1–year break in service occurs in any calendar year, plan year, or other consecutive 12–month period designated by the plan and applied on a consistent basis (and not prohibited under Labor Department regulations) in which the employee has no more than 500 hours of service. For example, if the plan is on a calendar year basis, and the employee works 1,000 hours in 1976, 501 hours in 1977, 501 hours in 1978, and 1,000 hours or more in 1979, the employee would not have a break in service (although the plan would not be required to accrue benefits or give vesting schedule credit for 1977 or 1978).

The rules with respect to breaks in service for vesting and benefit accrual purposes may be summarized as follows:

(1) If an employee has a 1–year break in service, the plan may require (for administrative reasons) a 1–year waiting period before his prebreak and post-break service must be aggregated under the plan. However, once the employee has completed this waiting period, he must receive credit for that year (for purposes of vesting and accrued benefit).

(2) In the case of an individual account plan (including a plan funded solely by individual insurance contracts, as well as a "target benefit plan") if any employee has a 1–year break in service, his vesting percentage in pre-break benefit accruals does not have to be increased as a result of post-break service.

(3) Subject to rules (1) and (2), once an employee has achieved any percentage of vesting, then all of his pre-break and post-break service must be aggregated for all purposes.

(4) For all nonvested employees (and subject to rules (1) and (2)), the employee would not lose credits for pre-break service until his period of absence equaled his years of covered service. Under this "rule of parity" for example, if a nonvested employee had three years of service with the employer, and then had a break in service of 2 years, he could return, and after fulfilling his 1–year reentry requirement, he would have 4 years of covered service, because his pre-break and post-break service would be aggregated.

For years beginning prior to the effective date of the vesting provisions, a plan may apply the break-in-service rules provided under the plan, as in effect from time to time. However, no plan amendment made after January 1, 1974, may provide for break-in-service rules which are less beneficial to any employee than the rules in effect under the plan on that date, unless the amendment complies with the break-in-service rules established under this bill.

The principles of some of the rules outlined above may be illustrated as follows: For example, assume a plan is on a calendar year basis, and an employee with a 1–year break in service reenters employment on November 1, 1976, works 200 hours in 1976, and 1,700 hours by November 1, 1977. In this case, the employee would be eligible to reenter the plan on November 1, 1977, his pre-break and post-break service would be aggregated, he would advance one year on the vesting schedule for 1977, and he would also accrue benefits for 1977. On the other hand, if the employee reentered employment on March 1, 1976, worked 1,700 hours before December 31, 1976, and was not separated from service by March 1, 1977, he would be eligible to reenter the plan on March 1, 1977, advance one year on the vesting schedule for his 1976 service, and the plan would have to provide at least a partial benefit accrual for 1976.

H.R. Conf. Rep. No. 1280, 93 Cong., 2d Sess. (1974); S.Rep. No. 1090 93 Cong., 2d. Sess. (1974), U.S.Code Cong. & Admin.News 1974, p. 5038.

either permit or prohibit the application of break-in-service provisions under these circumstances.[31] The relevant passage of the legislative history summarizes four general rules "with respect to break in service for vesting and benefit accrual purposes." The first two (concerning one-year breaks-in-service and individual account plans) are inapplicable here. The third rule, which provides that "[s]ubject to rules (1) and (2), once an employee has achieved any percentage of vesting, then all of his pre-break and post-break service must be aggregated for all purposes," appears to support plaintiff's position. Likewise, the fourth rule, which provides that non-vested employees will "not lose credits for pre-break service until his period of absence equaled his years of covered service" (the rule of parity), supports the plaintiff's position.

Following these rules, is a passage which provides "[f]or years beginning prior to the effective date of the vesting provisions, a plan may apply the break-in-service rules provided under the plan, as in effect from time to time," and appears to support defendants' position. The passage, however, is silent on the critical question of whether this exclusion applies to the accrual provisions as well as the referenced vesting provisions.[32] While defendants urge us to answer the question in the affirmative, effectively importing the introductory "for vesting and benefit accrual purposes" language that proceeds the four general rules to the sentence that follows them, we decline to do so.

While defendant's reading of the legislative history is a plausible one, we refuse to read this isolated passage as sufficient to demonstrate a clear Congressional intent to extend the exclusion in the vesting section to the calculation of an employee's accrued benefit in the face of the more precise language found in the relevant provisions of the Act, the regulations issued by the agencies and the interpretation issued by the IRS. Thus, we conclude that through the language of the Act, Congress has resolved the precise question at issue here in the plaintiffs favor, and alternatively, that if the Act is silent or ambiguous on this point, that the agencies' interpretations of the relevant language are reasonable and entitled to deference.

### B. Plaintiff's Claims for "Sabbatical Years" and for SRP Benefits

Plaintiff's fifteenth and sixteenth claims for relief seek credit for two "sabbatical years" under the Plan and for SRP benefits based on 25 years of credited service. Compl. ¶¶ 122–128. Under the Plan, "sabbatical years" are available to employees with twenty-three years of credited service who need two additional years of credited service to receive SRP benefits. See, e.g., 1995 Plan, A378. Employees receiving credit for sabbatical years can receive up to two years of credited service towards the 25 year requirement for SRP benefits. See, id. Defendants contend that plaintiff is ineligible for sabbatical year credit and for SRP benefits because his 1970—1972 break in service leaves him with only 10 years of credited service under the plan. Defs.' Mem., pp. 32–33.

As we have held that defendants may not apply the Plan's pre-ERISA break in service rules to disregard plaintiff's first thirteen years of service, plaintiff appears

---

**31.** Indeed, with respect to the applicability of pre-ERISA break-in-service rules for accrual purposes, both the cited passage of the legislative history, and the entire legislative history of the Act appear indeterminate.

**32.** The remainder of the legislative history is likewise silent on this issue.

to have twenty-three years of service, making him potentially eligible for sabbatical credit. Accordingly, defendants' request for summary judgment on plaintiff's fifteenth and sixteenth claims is denied, and the defendants are instructed to determine consistent with this opinion whether plaintiff is entitled to the sabbatical year credit and SRP benefits sought.

### C. Calculation of Plaintiff's VRP Benefit

Defendants' motion for summary judgment on plaintiff's seventeenth claim for relief, which alleges that defendants miscalculated his monthly VRP benefit, Compl. ¶¶ 129–133, is denied. Defendants calculate that plaintiff is entitled to $263.38 per month, while plaintiff calculates his VRP benefit as $289.68 per month. The difference between the two figures stems from whether plaintiff's salary is computed using the $950 maximum pension in effect through September 30, 1986, or the $1,045 maximum pension in effect from October 1, 1986 to September 30, 1992. Defs.' 56.1 Statement, ¶ 10. While the last year in which plaintiff is entitled to a year of credited service is clearly 1986, Defs.' 56.1 Statement, ¶ 20; A1 (chart reading "1986P 912.0 [hours]"), it is not entirely clear from the record whether the 1986 Plan year is the year ending on September 30, 1986 or the year beginning on October 1, 1986. Moreover, in light of our decision on the break in service issue, plaintiff is entitled to a recalculation of his accrued benefit to include all his years of credited service under either the SRP or VRP. Accordingly, defendants' motion for summary judgment is denied.

### D. Statutory Penalties Under ERISA

Plaintiff's eighteenth claim for relief seeks the imposition of statutory penalties pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for defendants' alleged failure to furnish certain documents, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), in response to his counsel's 1998 request.[33] For the reasons that follow, defendant's motion for summary judgment is granted in part and denied in part.

Plaintiff alleges that he was not provided with (1) an updated SPD and (2) any IRS determination letters (including applications for them). Compl. ¶¶ 135–40. Defendants provided the 1992 SPD, but did not provide IRS determination letters. A153–157. ERISA § 104(b)(4) requires a plan administrator to provide, upon request, "the latest updated [SPD]" and "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The Second Circuit has held that "other instruments" was not meant to include "all of the plan's papers, documents, recorded information, or reports," *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 143 (2d Cir.1997), but encompasses "formal or legal documents under which a plan is set up or managed." *Id.* at 142–43. IRS determination letters are not formal documents under which a plan is set up or managed. *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654 (4th Cir.1996). Accordingly, they are not "other instruments under which a plan is established or operated," nor are applications for them such instruments, and defendants were not required to produce them.

---

**33.** Plaintiff counsel's September 21, 1998 letter, A153, requested the Plan's "current" SPD, which defendants provided. Plaintiff counsel's subsequent October 21, 1998 letter, A160–163, clarified the previous request and requested an "updated" SPD. Presumably, any penalties for failing to provide the latest updated SPD would commence from November 21, 1998, thirty days after the letter which actually made the request.

■ The same cannot be said for defendants' failure to provide an updated SPD. While it is undisputed that the defendants promptly provided a copy of the 1992 SPD in response to plaintiff's 1998 request, it is also undisputed that defendants failed to prepare an SPD that reflected amendments made within the proceeding 5 years as required by ERISA § 104(b)(1).[34] Defs.' October 16, 1998 letter, A156–157. Defendants' failure to prepare a document required by ERISA cannot be a defense to a beneficiary's request for penalties for the failure to provide a copy of that document. *See Kascewicz v. Citibank, N.A.,* 837 F.Supp. 1312, 1323 (S.D.N.Y.1993).

■ The imposition of penalties for failure to supply requested information under ERISA § 502(c)(1) is at the discretion of the trial court. In deciding whether to award penalties for defendants' failure to provide an updated SPD, courts consider the following factors:

(1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary.

*Austin v. Ford,* 1998 WL 88744, at *6 (S.D.N.Y.1998). *See also Pagovich v. Moskowitz,* 865 F.Supp. 130, 137 (S.D.N.Y. 1994) (same).

■ Defendants assert that plaintiff made only one request for documents, that defendants promptly explained which documents they would provide, that there is no showing of prejudice or injury to the plaintiff, and that under the factors above, the Court should decline to impose penal-

ties, Defs.' Mem. at 35–36. While prejudice is "a significant factor," in the decision to award penalties, it is not a prerequisite. *Kascewicz,* 837 F.Supp. at 1322. Thus, we cannot conclude with certainty on the basis of the present papers that plaintiff will be unable to demonstrate that he is entitled to some penalty. *Compare Austin,* 1998 WL 88744, at *6–7 (awarding penalties at $10 per day despite the fact that plaintiff did not claim prejudice) *with Lacoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 230 (S.D.N.Y.1997) (declining to award penalties where both prejudice and bad faith were absent) *and Grohowski v. U.E. Systems, Inc.,* 917 F.Supp. 258, 261 (S.D.N.Y.1996) (same).

Accordingly, defendants' motion for summary judgment is denied with respect to the failure to produce an updated SPD and granted with respect to the IRS determination letters (and requests for such letters).

### E. *Plaintiff's Claim Concerning Copying Fees is Dismissed*

■ Defendants' motion for summary judgment against plaintiff's nineteenth claim for relief, which alleges that defendants failed to assess a "reasonable charge" for copies of documents provided to him pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), is granted. The Department of Labor has issued a regulation proscribing a maximum reasonable charge, which provides in pertinent part:

Reasonableness. The charge assessed by the plan administrator to cover the costs of furnishing documents is reasonable if it is equal to the actual cost per page to the plan for the least expensive means of acceptable reproduction, but in no event

---

**34.** Ultimately, defendants did prepare an updated SPD, and did provide a copy to the plaintiff in December, 1999.

may such charge exceed 25 cents per page.

29 C.F.R. § 2520.104b–30. Plaintiff asserts that defendants charge of 15 cents per page was not reasonable in light of the availability of commercial reproduction services that charge less per page. Pl.'s Opp'n Mem., pp. 15–16.

First, the Court notes that the total amount charged to the plaintiff for copying was $30.45 (203 pages at 15 cents per page). To pursue a claim for this amount,[35] under the circumstances of this case, borders on the frivolous. Second, while the use of the words "actual cost" and "least expensive means of acceptable reproduction" in the Department of Labor's regulation precludes this Court from imposing sanctions pursuant to Fed. R.Civ.P. 11, we note that the conduct of plaintiff's counsel in pursuing this claim is vexatious and unprofessional. At a minimum, counsel for the plaintiff has allocated time and available briefing pages to pursuing this claim where his client's interests would have been better served had counsel's efforts been directed to the merits of plaintiff's other claims. Moreover, plaintiff's pursuit of this claim has doubtless imposed costs on the Pension Plan far in excess of the amount at issue.

Finally, ERISA § 104(b)(4) entitles plaintiff to copies of certain plan documents at a "reasonable charge," not at the lowest rate commercially available. 29

U.S.C. 1024(b)(4). We do not read the relevant regulation to require pension plans to conduct a cost/benefit analysis to determine if the per page savings from outplacing their copying exceeds the additional labor costs of sending an employee to do so. Where documents are copied "in house" rather than at a commercial copying service, a charge of 15 cents per page as an estimate of the "actual cost" of those copies is reasonable where, as here, plaintiff has offered no evidence to suggest that defendants' actual costs were higher.

### F. *Statute of Limitations*

For the reasons that follow, defendants motion for summary judgment on statute of limitations grounds is granted in part and denied in part.

#### 1. *Plaintiff's Breach of Fiduciary Duty Claim*

For claims of breach of fiduciary duty, ERISA § 413(a) provides for a statute of limitations period equal to the lesser of (1) six years after the date of the last action constituting a breach; or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.[36] As discussed below, plaintiff brings a fiduciary duty claim based on defendants' December 4, 1995 letter, A113–16, and defendants' March 30, 2000 letter, Bates No. 000026. Compl. ¶¶ 73–74; Pauk Aff. in Opp'n, ¶¶ 17–18,23–24.

---

**35.** The amount of the alleged overcharge is presumably even smaller, as some per page charge must be reasonable.

**36.** ERISA § 403 provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of

an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.
29 U.S.C. § 1113.

While we are not certain of the exact date on which it was received, there can be no dispute that plaintiff (and his counsel) had actual knowledge of the December 4, 1995 letter, which contains the statements plaintiff's counsel alleges amount to breaches of fiduciary duty, more than 3 years before this action was commenced on August 20, 1999. Thus, to the extent that plaintiff's sixth claim for breach of fiduciary duty is based upon the defendants' December 4, 1995 letter, it is barred by the statute of limitations.

### 2. *Plaintiff's Other Claims*

■ For claims other than breach of fiduciary duty, ERISA does not provide a statute of limitations period. Accordingly, the controlling statute of limitations period is that specified in the most nearly analogous state limitations statute. *See, e.g., Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.1983). For plaintiff's benefit claims, the six year period for contract actions prescribed by New York's C.P.L.R. § 213 controls. *See id.*

■ We now turn to effect of the statute of limitations on plaintiff's claims for benefits under ERISA. A cause of action under ERISA accrues upon a "clear repudiation" by a plan that is known, or should be known to the plaintiff, regard-less of whether the plaintiff formally applied for benefits. *Carey v. International Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir.1999).

Defendants assert that the Plan's November 20, 1991 letter, A51, was such a "clear repudiation." Defs.' Mem. at 39. While the Plan's November 20, 1991 letter does deny plaintiff a "window period pension" based on a determination that he has only the years of credited service, in light of the subsequent history of correspondence between the defendants and plaintiff's counsel concerning plaintiff's benefits,[37] we cannot conclude, as a matter of law, that plaintiff knew or should have known that the November 20, 1991 letter was a "clear repudiation." Accordingly, except as granted with respect to plaintiff's breach of fiduciary duty claim, defendants' motion for summary judgment on statute of limitations grounds is denied.

## III. Plaintiff's Class Claims

### A. *Plan's pre-ERISA Accrual Schedule Complies With ERISA*

The parties have filed cross-motions for summary judgment on plaintiff's first cause of action, which alleges that the Plan's benefit structure violates ERISA § 204(b)(D) because it does not provide the same pre-ERISA benefit accrual rate for all participants. Compl. ¶¶ 19–27. For

---

**37.** The defendants continued to discuss plaintiff's benefits with plaintiff's counsel, and even altered the amounts payable to the plaintiff. *See, e.g.,* Plaintiff counsel's December 6, 1994 letter, A84–86, contesting denial of plaintiff's benefits; Board's May 1, 1995 and November 14, 1995 meetings, A96–103 (5/1/95 Minutes), A104–111 (11/14/95 Minutes)(considering those claims); Defendants' Letter of December 4, 1995, A113–116, (communicated the results of those meetings and denying benefits). *See also, e.g.,* Letter of September 24, 1997 (increasing plaintiff's VRP benefit). Moreover, some of the subsequent correspon-dence belies the notion that the defendants' November 1991 letter could reasonably be viewed as a "clear repudiation" of plaintiff's claims for increased benefits. *See, e.g.,* Defendants' Letter of April 8, 1999, A182 (noting that *"by letter dated December 4, 1995,* PTF advised you of the Trustee's final and binding determination regarding Mr. McDonald's appeal for increased pension benefits.")* (emphasis added). We note that were a "clear repudiation" not to have occurred until December 4, 1995, plaintiff's claims were brought well within the 6 year statute of limitations.

the reasons that follow, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgement is granted.

As previously noted, ERISA's benefit accrual provisions require benefit plans to satisfy one of three benefit formulas. *See* 29 U.S.C. § 1054(b)(1)(A)-(C). *See also, e.g., Lageoles v. Ret. Fund of the Fur Mfg. Indus.*, 1985 WL 1815, at *20 (S.D.N.Y. 1985). With respect to pre-ERISA service, plan beneficiaries must receive an accrued benefit that is not less than the greater of (i) his accrued benefit under the terms of the plan, or (ii) one-half the accrued benefit he would have received under one of ERISA's three benefit formulas. 29 U.S.C. § 1054(b)(1)(D). *See, e.g., Lageoles*, 1985 WL 1815, at *20. *See also Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*, 964 F.Supp. 677, 684 (E.D.N.Y.1997) (the pre-ERISA accrual requirements of ERISA § 204(b)(1)(D) are satisfied by providing one-half of the post-ERISA accrual under any one of the Act's accrual formulas).

As the terms of the Plan did not provide for any accrued benefit prior to ERISA, a Plan beneficiary is entitled to receive one-half of the accrued benefit he would have received under one of ERISA's three benefit formulas. *See* 29 U.S.C. § 1054(b)(1)(D)(ii). The only benefit formula the Plan is alleged to have satisfied is the 3% accrual formula. Thus, plan beneficiaries must accrue one-half of 3% of the normal retirement benefit, or simply, 1.5% of the normal retirement benefit, for each pre-ERISA year of service. There is no dispute that the Plan at issue here provides for at least this accrual.[38]

Plaintiff's argument that the plan violates ERISA § 204(b)(1)(D) because it does not provide the same pre-ERISA accrual for all beneficiaries is foreclosed by Judge Sand's decision in *Lageoles*, 1985 WL 1815, at *21–23. ERISA § 204(b)(1)(D) does not require the same pre-ERISA accrual rate for all beneficiaries; it "merely sets a lower limit on the

---

**38.** Before its subsequent revision, the Plan's VRP provided an accrued benefit of 1.5% per month for each year of pre-ERISA service to all employees with less than 25 years of total service. 1995 Plan, A389; 1985 Plan, A270. In 1995, the Plan was amended to extend this VRP accrued benefit to all plan participants. 1995 Plan Amendment, A122–23. The defendants assert that the Plan's pre-ERISA accrual is slightly higher due to the final portion of the VRP accrual formula, Defs.' Mem. p. 13 n. 7. As the final portion of the VRP formula provides for an addition 3% of the pre-ERISA accrual multiplied by the number of post-ERISA years of service, it is unclear that this additional "kicker," Defs.' Mem. p. 13, n. 7, provides any accrued benefit for pre-ERISA years of service rather than an additional accrued benefit in post-ERISA years that is proportional to the formula's pre-ERISA benefit. Indeed, this additional post-ERISA accrual appears necessary to satisfy the IRS regulation which requires the difference between an employee's pre-ERISA accrued benefit and his normal 3% benefit to be accrued in the post-ERISA years at the rate of 3% per year. *See* 26 C.F.R. § 1.411(b)–1(c)(2)(v).

Under the 1995 Plan, as amended, all vested participants receive at least the benefits provided by the Plan's VRP formula. 1995 Plan Amendment, A121–23. Some beneficiaries who qualify receive benefits according to the old SRP schedule if those benefits are greater than those provided by the VRP. *Id.* Plaintiff's counsel suggests that those qualifying for the SRP somehow accrue benefits at the rate of 3% per year for all years of service, Pl.'s Mem., p. 15. It seems clear however, that all Plan participants accrue benefits according to the VRP formula, with some (who qualify for the SRP) receiving amounts above the minimum provided by the VRP. However, even assuming *arguendo* that those receiving SRP benefits have higher accruals for pre-ERISA years than those receiving VRP benefits, ERISA's minimum accrual provisions are satisfied because the Plan provides each participant with at least the minimum accrual mandated by ERISA.

level of benefits which may be awarded to plan participants." *Id.* at *21. As there is no dispute that the Plan provides an accrual of at least 1.5% of the normal retirement benefit to all beneficiaries for each year of pre-ERISA service, it satisfies the requirements of ERISA § 204(b)(1)(D).[39] Accordingly, plaintiff's motion for summary judgment on his first claim of relief is denied and defendants' motion for summary judgment on plaintiff's first claim for relief is granted.

### B. *Plan's Post–ERISA Accrual Schedule Complies with ERISA*

■ The parties have also cross-moved for summary judgment on plaintiff's second cause of action, which alleges that the Plan's post-ERISA accrual schedule violates ERISA. Compl. ¶¶ 29–50. Specifically, the plaintiff alleges that the Plan's post-ERISA accrual schedule fails to satisfy ERISA's 3% accrual schedule because the maximum benefit accrues over 40 years of service rather than over 33 and ⅓ years of service. Compl. ¶¶ 35,43,48.[40] For the reasons that follow, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

As plaintiff concedes,[41] the 1995 Plan, as amended, provides that all beneficiaries retiring on or after January 1, 1976 receive the greater of the benefits provided under the SRP or the VRP.1995 Plan Amendment, A121–23. Moreover, it is clear that the Plan's VRP benefit formula provides for an accrued benefit that satisfies ERISA's 3% benefit accrual test. *See* 29 U.S.C. § 1054(b)(1)(A). Accordingly, all employees who receive benefits under the 1995 Plan, as amended, have received sums which reflect at least the minimum accrual required by ERISA.

For post-ERISA service, the Plan's VRP provides for an accrued benefit of 3% per month per year of the Plan's maximum monthly benefit in effect at the time the employee ceases employment in the industry. 1995 Plan Amendment, A122. For employees whose service begins after January 1, 1976, this necessarily results in the accrual of 100% of the maximum monthly benefit in 33 and ⅓ years.

For employees with both pre- and post-ERISA service, the Plan's VRP benefit formula provides (a) an accrued benefit of 1.5% per month per year of the maximum monthly benefit in effect at the time the employee ceases employment in the industry for each year of pre-ERISA service. *Id.* In addition, the Plan provides (b) an accrued benefit of 3% per month per year of the maximum monthly benefit in effect at the time the employee ceases employment in the industry for each year of post-

**39.** Plaintiff's counsel also argues that the Plan's pre-ERISA benefit structure is unlawfully backloaded. Pl.'s Mem. in Opp'n, pp. 2–3; Pauk Aff. in Opp'n, ¶¶ 4–6. This argument is based on the erroneous premise that providing one half the accrued benefit required by ERISA's 3% method for pre-ERISA service is unlawful. Instead, it is specifically authorized by ERISA. *See* 29 U.S.C. § 1054(b)(1)(D). While plaintiff's counsel cites *Carollo v. Cement & Concrete Workers Pension Plan*, 964 F.Supp. 677 (E.D.N.Y. 1997), *DeVito v. Local 819 Pension Plan*, 975 F.Supp. 258 (S.D.N.Y.1997), and *Helms v. Local 705 IBT Pension Plan*, 1999 WL 965230 (N.D.Ill.1999), those cases, which all involve plans that did not satisfy any of ERISA's three benefit accrual formulas, are inapplicable here, because the Plan, as amended, satisfies ERISA's 3% accrual formula.

**40.** The plaintiff also alleges that the plan fails to satisfy the 133% and fractional accrual schedules. Compl. ¶¶ 36–40, 44–45, 49–50. As discussed previously, we need not consider these arguments, because the Plan need satisfy only one of the three alternative accrual schedules in order to comply with ERISA.

**41.** Pl.'s Mem. in Opp'n, p. 4.

ERISA service plus 3% per month per year of the amount provided by (a) above. *Id.*

While employees who have accrued benefits for years of pre-ERISA service at a reduced rate may require more than 33 and ⅓ years of combined pre- and post-ERISA service to accrue the maximum monthly benefit, this is the inevitable result of Congress's decision to permit pension plans to provide reduced accruals for pre-ERISA years of service. Accordingly, the Plan's VRP benefit accrual formula satisfies ERISA's accrual requirements and is not impermissibly back-loaded.[42] *See* 29 U.S.C. § 1054(b)(1)(A) (3% accrual); 29 U.S.C. § 1054(b)(1)(D)(ii)(one half the accrual provided for by any of ERISA's alternative formulas for pre-ERISA service); 26 C.F.R. § 1.411(b)–1(c)(2)(v) (difference between an employee's accrued benefit for pre-ERISA years and his normal 3% benefit must be accrued in the post-ERISA years at the rate of 3% per year).

### C. *Defendants Have Made All Retroactive Adjustments Under the 1995 Plan Amendment*

Plaintiff's sixth claim for relief, *Compl.* ¶¶ 61–71, alleges that defendants have "unreasonably failed to reveal whether they paid retroactive adjustments to all participants entitled to them" and that as a result, "it must be presumed that they did not make those payments, thereby violat-

ing the terms of the Plan, as amended." Compl. ¶ 71. For the reasons that follow, defendants' motion for summary judgment on plaintiff's sixth claim for relief is granted.

There is no dispute that the Plan has paid retroactive benefits to 110 of 114 beneficiaries who were entitled to a retroactive adjustment of their pension amounts under the 1995 Plan Amendment. Lee Aff., ¶¶ 4–7. While plaintiff's counsel argues defendants must pay retroactive adjustments beyond those to the 114 beneficiaries already identified in order to include beneficiaries who retired before October 1, 1992, Pl.'s Mem., pp. 22–23; Pl.'s Mem. in Opp'n, pp. 18–19, it is undisputed that no pensioner who retired prior to 1992 has sufficient years of post-ERISA service to receive an increase in benefits under the 1995 Amendment. Lee Aff., ¶ 4.

Thus, except for four beneficiaries who have not received adjustments because they are deceased with no next of kin, Lee Aff. ¶ 5, n. 1, and those retiring on or after October 1, 1996, whose benefits are governed by more recent Plan benefit accrual formulas, Lee Aff. ¶ 6, the Plan has paid all retirees benefits in accordance with the 1995 Plan, as amended. Lee Aff. ¶¶ 4–7. Moreover, there is no question that a proposed class of four claimants is not sufficiently numerous to render the joinder of all members impracticable, as required by

---

**42.** Indeed, it appears that the Plan's VRP formula provides precisely the accrual required by ERISA and its implementing regulations, not a penny more or less.

While plaintiff's counsel argues that the defendants have not satisfied ERISA's 3% schedule, and may not have made all "shortchanged" beneficiaries whole, Pl.'s Mem. in Opp'n. p. 4; Pauk Aff. in Opp'n, ¶¶ 7–16,22, the allegation that defendants have not paid all beneficiaries the accrual required by ERISA's 3% schedule is based on the errone-

ous assumption that the Plan may not provide a 1.5% accrual for years of pre-ERISA service. The Plan's VRP formula however, satisfies ERISA's minimum accrual standards. Moreover, to the extent that any asserted failure to make beneficiaries whole rests on a claim for interest on delayed benefit payments, as discussed below, that is not an appropriate basis for class relief, *Dunnigan v. Metropolitan Life Ins. Co.*, 99 F.Supp.2d 307, 325–26 (S.D.N.Y.2000), and will not preclude the Court from granting summary judgment.

Fed.R.Civ.P. 23(a)(1). Accordingly, defendants' motion for summary judgment on plaintiff's sixth claim for relief is granted.

### D. *Defendants' Alleged Breach of Fiduciary Duty*

Plaintiff's seventh claim for relief alleges that defendants committed a breach of fiduciary duty by lying when they wrote to his attorney that the Plan had always complied with the 3% schedule and that plaintiff's argument to the contrary had no merit. Compl. ¶¶ 73–74. For the reasons that follow, defendants' motion for summary judgment on plaintiff's seventh claim for relief is granted.

Specifically, plaintiff's counsel argues that the defendants' December 4, 1995 letter to him, A113–16, which stated that the Trustees had decided to amend the Plan to clarify the amount of monthly benefits to be provided to certain beneficiaries and which concluded that there was no factual or legal merit to the arguments raised in plaintiff's appeal, along with defendants' March 30, 2000 letter, Bates No. 000026, notifying beneficiaries receiving a retroactive adjustment that they were entitled to an increased pension amount, give rise to a claim under *Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Compl. ¶¶ 73–74; Pauk Aff. in Opp'n, ¶¶ 17–18, 23–24.

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." *Varity v. Howe*, 516 U.S. at 506, 116 S.Ct. 1065 (citing ERISA § 404(a)). In assessing the requirements of fiduciaries under ERISA, our analysis is informed by the common law of trusts. *See id.*, 516 U.S. at 497, 116 S.Ct. 1065. Falsehoods are inconsistent with the duty of loyalty owed by all fiduciaries and codified in ERISA § 404(a)(1). *See id.*, at 506, 116 S.Ct. 1065.

■ To establish a breach of fiduciary duty based on an alleged misrepresentation, the plaintiff must show: (1) that the defendants were acting in their fiduciary capacities when they made the alleged misrepresentations; (2) that the defendants made a material misrepresentation; and (3) that the plaintiff relied on that misrepresentation to his detriment. *Cerasoli v. Xomed, Inc.*, 47 F.Supp.2d 401, 405 (W.D.N.Y.1999) (*citing Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) and *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122, 126 (2d Cir.1997)). *See also, Becker v. Eastman Kodak Co.*, 120 F.3d 5, 8 (2d Cir.1997) ("a plan breaches its fiduciary duty by making affirmative material misrepresentations ... about changes to an employee pension benefits plan"); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir.1994) ("a plan administrator may not make affirmative misrepresentations to plan participants about changes to an employee pension benefits plan"). A misrepresentation is "material" if it would induce a reasonable person to rely upon it. *See Ballone*, 109 F.3d at 122–23; *Mullins*, 23 F.3d at 669.

■ Here, the defendants were acting in their fiduciary capacities, satisfying the first element. Turning first to defendants' December 4, 1995 letter, A113–16, the defendants' statement of their position therein that plaintiff was not entitled to increased benefits is not a misrepresentation. While defendants' denial of plaintiff's claim for increased benefits has not been validated by this litigation in all respects, not every denial of benefits amounts to a breach of fiduciary duty. Similarly, defendants' statements in the December 4 letter concerning the Plan are not misrepresentations. While plaintiff's counsel appears to object to the defendants' failure to declare plaintiff the catalyst for the 1995 Plan Amendment, Pauk

Aff. in Opp'n, ¶ 17–24, defendants' expression of its position that the Plan did not violate ERISA was not a misrepresentation.

■ Moreover, even assuming that both sets of statements in the December 4 letter were false, plaintiff has not alleged that he relied upon them to his detriment or that he has suffered any prejudice as a result. The defendants' December 4, 1995 letter was sent to plaintiff's counsel nearly 10 years after plaintiff last completed a year of credited service under the Plan and four years after plaintiff last completed any hours of service under the plan.[43] Even assuming that plaintiff's claim for breach of fiduciary duty based on this letter were not barred by the statute of limitations, plaintiff could not have reasonably relied the December 4, 1995 letter to his detriment.[44] *See Kurz v. Philadelphia Elec. Co.*, 994 F.2d 136, 140 (3rd Cir.1993) ("The ultimate inquiry is whether there is a substantial likelihood that the affirmative misrepresentation would mislead a reasonable employee in making an adequately informed decision about if and when to retire.") (internal quotations and citations omitted). Similarly, as the December 4 letter was sent only to plaintiff, other putative class members could not have reasonably relied upon it to their detriment.

Turning next to defendants' March 30, 2000 letter, we note that according to its terms, the letter was sent to retired Plan beneficiaries, informing them of a retroactive increase of their pension benefits. The statements therein that the defendants had determined that the recipients were entitled to increased pensions were not misrepresentations. Indeed, they accurately informed the recipients that they could expect a retroactive increase in benefits. While plaintiff's counsel object that defendants' took credit for the increase, Pauk Aff. in Opp'n, ¶ 24, that does not amount to a misrepresentation, let alone a material one. Even assuming *arguendo* that the March 30, 2000 letter contained a misrepresentation about the genesis of the retroactive increase, the retired beneficiaries receiving it could not have reasonably relied upon it to their detriment. Accordingly, defendants' motion for summary judgment as to plaintiff's seventh claim for relief is granted.

## E. *Plaintiff's Claim for Interest on Late Payments*

Plaintiff's eighth claim for relief seeks an award of interest on the retroactive pension adjustments paid by the defendants. Compl. ¶¶ 76–78. For the reasons that follow, defendants' motion for summary judgment on plaintiff's eighth claim is granted in part and denied in part.

■ There is no question that plaintiff may pursue an award of prejudgment interest on unpaid benefits where the Court has found an ERISA violation. *See, e.g., Mendez v. Teachers Ins. & Annuity Ass'n and College Retirement Equities Fund*, 982 F.2d 783, 789–90 (2d Cir.1992) (prejudgment interest discretionary in ERISA cases and should be awarded only when such relief is "fair, equitable and necessary to compensate the wronged party fully"). *Id.* Rather, the question is whether plaintiff may bring a separate cause of action

---

**43.** Plaintiff completed 4 hours of service in 1991. Al (Chart).

**44.** The Court notes that plaintiff, through his counsel, continued vigorously to pursue claims for increased benefits even after receiving the defendants' December 4, 1995 letter, apparently undeterred by the letter. *See, e.g.,* Letter from Mr. Pauk dated April 16, 1997, A126–27; Letter from Mr. Pauk dated February 24, 1999, A173–76.

for interest on benefits which have been paid after a period of delay.

### 1. Interest on Delayed Benefits Is Recoverable Under ERISA § 502(a)(3)

■ Plaintiff brings his eighth claim for relief pursuant to ERISA § 502(a)(3),[45] which authorizes civil actions by a participant, beneficiary or fiduciary "(A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or, (B) to obtain other appropriate equitable relief" to remedy such violations or to enforce any provisions of ERISA or the terms of the plan. 29 U.S.C. 1132(a)(3). While the Second Circuit has not decided the question of whether interest on delayed benefit payments is available as "other appropriate equitable relief" under ERISA § 502(a)(3)(B), the Third and Seventh Circuits have answered that question in the affirmative. See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 131 (3rd Cir.2000); Fotta v. Trustees of the United Mine Workers of America, Health & Ret. Fund, 165 F.3d 209, 214 (3rd Cir. 1998); Clair v. Harris Trust and Sav. Bank, 190 F.3d 495, 497–98 (7th Cir.1999), cert. denied 528 U.S. 1157, 120 S.Ct. 1166, 145 L.Ed.2d 1076 (2000).

Moreover, the Second Circuit has held that a widow may sue under ERISA § 502(a)(3)(B) for the sum of money that she should have received upon her husband's death because her claim sought "make whole" relief which Congress regards as equitable. Strom v. Goldman Sachs & Co., 202 F.3d 138, 149–50 (2d Cir.1999).[46]

The question of whether interest on delayed benefit payments is available as "other appropriate equitable relief" under ERISA § 502(a)(3)(B), has been addressed by the district court in Dunnigan v. Metropolitan Life Insurance Co., 99 F.Supp.2d 307, 321 (S.D.N.Y.2000), appeal docketed, No. 00–7399 (2d Cir.2000). Relying on Strom, the Dunnigan court concluded that actions for interest on delayed benefit payments are appropriate under ERISA § 502(a)(3)(B) where plan participants establish an underlying breach of ERISA or the plan documents by a plan fiduciary. See Dunnigan, 99 F.Supp.2d at 321. For the reasons stated by the Dunnigan court, we conclude that interest on delayed benefit payments is recoverable under ERISA § 502(a)(3)(B). See also, Gustafson v. Kennametal, Inc., 2001 WL 25722, at *6–7 (S.D.N.Y.2001) (interest on delayed benefit payments available under ERISA § 502(a)(3)(B) to prevent unjust enrichment) (citing Dunnigan ).

### 2. Interest Recoverable Only on Individualized Basis

■ While interest on delayed benefits may be awarded under ERISA § 502(a)(3)(B), awarding restitution is an equitable remedy, and is subject to equitable defenses such as laches. See Dunnigan, 99 F.Supp.2d at 325 (citing Fotta, 165 F.3d at 214). For this reason, the Dunnigan court concluded that a class action

---

**45.** Plaintiff cannot bring his claim for interest on delayed benefits under ERISA § 502(a)(1)(B), which authorizes actions to enforce a beneficiary's rights under the Plan, because the Plan does not provide for interest on late payments, Compl. ¶ 76. "Extracontractual" relief cannot be recovered under ERISA § 502(a)(1)(B). See, e.g., Dunnigan v. Metropolitan Life Ins. Co., 99 F.Supp.2d 307, 314 (S.D.N.Y.2000) (collecting cases).

**46.** In Strom, the Second Circuit distinguished Mertens v. Hewitt Assocs., 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and permitted a beneficiary to recover restitution, as opposed to a monetary award, as "other equitable relief" under ERISA § 503(a)(3)(B) because restitution is equitable in nature and was necessary to prevent the defendant's unjust enrichment. See Strom, 202 F.3d at 148–49.

format is not suitable for the individualized treatment required for the exercise of equitable powers. *See* 99 F.Supp.2d at 325–26. *See also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 1999 WL 554591, at *8–10 (E.D.Pa.1999) (claim for interest on delayed benefits "unsuitable for class treatment"), *aff'd in part and rev'd in part on other grounds*, 213 F.3d 124 (3rd Cir. 2000). That aspect of the *Dunnigan* court's decision has been cited with approval in this district. *See Miner v. Empire Blue Cross/Blue Shield*, 2001 WL 96524, at *5 (S.D.N.Y.2001) (holding that plaintiff could not maintain class action seeking lost interest and other relief) (citing *Dunnigan* ). The briefs before us provide no persuasive reason to depart from Judge Scheindlin's careful analysis in *Dunnigan.*

Accordingly, defendants' motion for summary judgment is granted to the extent that plaintiff's seventh claim seeks class relief for interest on delayed benefit payments. It is unclear from the record before us, however, whether plaintiff has received delayed benefit payments himself. To the extent that plaintiff seeks interest on any such payments as a result of breaches of ERISA or the Plan,[47] the defendants' motion for summary judgment is denied, and plaintiff may seek such individual relief, if any.

### F. *Plaintiff's ERISA § 104(b)(1) Claims*

ERISA § 104(b)(1) requires plan administrators to furnish certain information to plan participants and beneficiaries. *See* 29 U.S.C. § 1024(b)(1). Plaintiff's *ninth* claim for relief alleges that defendants have failed to update the 1992 SPD in violation of ERISA § 104(b)(1), which requires plan administrators to provide an updated SPD to each participant and each beneficiary receiving benefits under the plan every five years, except when no amendments have been made to a plan during the proceeding five years. Compl., ¶¶ 80–82. Plaintiff's *tenth* claim for relief alleges that the 1995 Plan Amendment was a "material modification" of the Plan and that defendants failed to furnish a copy to each participant and beneficiary within 210 days after the end of the plan year in which the change was adopted, as required by ERISA § 104(b)(1). Compl., ¶¶ 84–88. Defendants' motion for summary judgment on both claims is granted.

There is no dispute that the Plan was amended in 1995, Defs.' 56.1 Statement, ¶ 13, and that defendants issued an updated SPD in January, 1999, seven months before this lawsuit was commenced.[48] Pauk Aff. in Opp'n, ¶¶ 27–28; Defs.' Mem. p. 22; 1999 SPD, A540–575; Compl. dated Aug. 19, 1999. Thus, there is no dispute that defendants' provided a copy of the

---

**47.** We note that where, as here, a plan's terms do not provide for interest on delayed payments, the failure to pay such interest cannot give rise to a breach of ERISA or the plan itself. *Dunnigan*, 99 F.Supp.2d at 323.

Plaintiff's counsel argues that interest on delayed benefit payments is automatically recoverable as of right under ERISA § 203(a), § 204(c)(3) and § 206(a). Compl. ¶ 77; Pl.'s Mem. in Opp'n, pp. 10–12. We reject this argument. The sections relied upon by the plaintiff are inapplicable here; none of them concern delayed benefit payments, let alone require that delayed benefits be paid with

interest. Moreover, while plaintiff depicts his argument as one of first impression, the automatic award of interest is contrary to both the language and the policy of ERISA. *See, e.g., Dunnigan*, 99 F.Supp.2d at 326.

**48.** While defendants sent most plan participants a copy of the 1999 SPD in January 1999, plaintiff received a copy of the 1999 SPD in October 1999 and his counsel received a copy in December 1999. Pauk Aff. in Opp'n, ¶¶ 27–28, Interrogatory Responses bearing Bates Stamp Nos. 000002–3.

1999 SPD within 5 years of the date of the 1995 Amendment, but not within 5 years of the 1992 SPD, as is required by ERISA § 104(b)(1). We note that plaintiff seeks only declaratory relief on his ninth claim, Compl. p. 35, Prayer for Relief ¶ 11. While the ninth claim is pled as a class claim, the declaratory relief requested can clearly be provided without considering class certification. Moreover, as defendants have now provided an updated SPD to all plan participants and beneficiaries, it appears to the Court that plaintiff's ninth claim is moot. Accordingly, defendants' motion for summary judgment on plaintiff's ninth claim is granted.

Likewise, while it is clear that defendants failed to furnish a copy of the 1999 SPD within 210 days after the plan year in which the 1995 Amendment was passed, defendants have now provided the requisite notice in the 1999 SPD. Accordingly, plaintiff's tenth claim for relief also appears to be moot, and defendants' motion for summary judgment is granted on plaintiff's tenth claim for relief.[49]

### CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is denied as to plaintiff's first and second claims for relief and is granted as to his eleventh claim for relief. Similarly, defendants' motion is denied as to plaintiff's fifteenth, sixteenth and seventeenth claims for relief and granted as to plaintiff's first, second, sixth, seventh, ninth, tenth and nineteenth claims for relief. Plaintiff's third, fourth, fifth, twelfth, thirteenth, and fourteenth claims are dismissed, by agreement of the parties, either as moot or as abandoned by the plaintiff. Further, defendants' motion for summary judgment is granted in part and denied in part with respect to plaintiff's eighth and eighteenth claims for relief, as stated in this opinion. Finally, defendants' motion for summary judgment on statute of limitations grounds is granted in part and denied in part as stated in this opinion.

### CONFERENCE

Counsel are directed to appear for a conference with the Court on Wednesday, April 25, 2001 at 3:30 p.m. at the United States Courthouse, 500 Pearl Street, New York, New York, in Courtroom 21A. Counsel should have authority to fully discuss all aspects of the litigation, including settlement.

**IT IS SO ORDERED.**

---

**49.** To the extent that plaintiff's ninth and tenth claims are not moot, the plaintiff may request permission to reargue and explain what additional relief, if any, he would suggest is appropriate.